UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
In the Matter of the Arbitration

-between-

**MEMORANDUM & ORDER**

06 CV 3530

NEW YORK STATE FEDERATION OF
PHYSICIANS & DENTISTS,

Plaintiff,

-against-

INTERFAITH MEDICAL CENTER,

Defendant.
------------------------------------------------------------X
DEARIE, Chief Judge.

Plaintiff New York State Federation of Physicians and Dentists ("Union") brings suit to enforce an arbitration award against defendant Interfaith Medical Center ("Hospital"). The Hospital counterclaims, asking that the Court vacate the award. Both parties have moved for summary judgment. At issue in the arbitration was whether the Hospital had violated a collective bargaining agreement ("CBA") between itself and the Union by failing to recall Drs. Michael Okpaku and Rebecca Lee, physicians whose employment it earlier had terminated. Finding that the Union had violated the CBA, the arbitrator awarded the terminated physicians back pay. For the reasons explained below, the Court declines to disturb the arbitrator's award, and grants summary judgment for plaintiff.

# BACKGROUND[1]

Both the Hospital and the Union are parties to the CBA, which became effective on January 1, 2004, and remains so until December 31, 2007. Def.'s Rule 56.1 Stat't ¶ 1. On September 27, 2004, the Hospital notified Drs. Okpaku and Lee, whom it had employed as "house physicians," that it was terminating their employment effective October 29, 2004. Id. ¶ 3; Pl.'s Rule 56.1 Stat't ¶ 4. On September 6, 2005, the Hospital hired two new physicians, Drs. Matos and Babalola,[2] each of whom was given the title "assistant attending surgeon." Def.'s Rule 56.1 Stat't ¶ 12, Mathurin Aff. Ex. A [hereinafter Arbitration Award] 2. The Union then filed a grievance seeking reinstatement for Drs. Okpaku and Lee on the ground that the Hospital's failure to recall them had violated Article XIX(5)(a) of the CBA, which provides:

> Whenever an approved vacancy occurs in a specialty or sub-specialty, employees who are on lay off in that specialty or sub-specialty who have not lost their seniority . . . shall be recalled, in accordance with their seniority within the specialty or sub-specialty . . . provided that they have the skills, abilities, qualifications, education and experience necessary to perform the available work as determined by the Hospital, which determination shall not be arbitrary and capricious. The needs of the Hospital shall also be taken into consideration.

Id. at 2-3. The Hospital responded that because Drs. Okpaku and Lee were not qualified to fill the two new positions, the CBA did not require it to recall them. Id. at 3-4.

---

[1] Citing the Union's initial failure to submit a reply to the Hospital's Local Rule 56.1 Statement of Material Facts, the Hospital urges the Court to deem admitted the factual allegations contained in that statement. As the Hospital observes, Def.'s Reply Mem. Supp. Mot. Summ. J. [hereinafter Def.'s Reply] 3, the Court may accept as true material facts asserted in an unopposed Rule 56.1 statement. See Gubitosi v. Kapica, 154 F.3d 30, 31 n.1 (2d Cir. 1998). However, the Court also "may in its discretion opt to conduct an assiduous review of the record even where one of the parties has failed to file [a Rule 56.1] statement." Holtz v. Rockefeller & Co., 258 F.3d 62, 73 (2d Cir. 2001) (internal quotation marks and citation omitted). Accordingly, and in light of the fact that the Union ultimately did submit a Rule 56.1 statement, the Court declines to deem admitted the Hospital's factual allegations.

[2] The parties have not provided the Court with the first names of Drs. Matos and Babalola.

Pursuant to Article VI of the CBA, the parties submitted the following issue for arbitration: "Did the employer violate the seniority provision of the collective bargaining agreement, specifically Article XIX(5)a, when it failed to recall Doctors Okpaku and Lee to positions in the department of surgery? If so, what shall be the remedy?" Id. at 2. Following a hearing, the arbitrator agreed with the Hospital that Drs. Okpaku and Lee were unqualified to act as "assistant attending surgeons," the position for which Drs. Matos and Babalola were hired. Id. at 7. The arbitrator also determined, however, that when the Hospital terminated Drs. Okpaku and Lee, non-bargaining unit personnel took up their work, performing it for approximately ten months until September 2005, when the Hospital hired Drs. Matos and Babalola. Id. at 8. The arbitrator noted that Dr. Albert Wright, the director of the Hospital's surgery department, had claimed that Drs. Okpaku and Lee were "useless," but also had conceded that their absence from the Hospital had been a "very difficult time" during which staff remaining at the hospital "had to sacrifice." Id. at 5, 7. "The overwhelming weight of the credible evidence," the arbitrator explained, "amply supports a finding that grievants performed a vital function at the hospital, one that still had to be performed after they were gone and was in fact done by non-bargaining unit personnel until Doctors Matos and Babalola came aboard." Id. at 8. On this basis, the arbitrator found that the Hospital's failure to recall Drs. Okpaku and Lee *immediately* after their layoff, and then keep them on the payroll until hiring their replacements, was a violation of Article XIX(5). Id. He ordered that Drs. Okpaku and Lee receive back pay for the period between their layoff and the date on which the Hospital hired Drs. Matos and Babalola, and retained jurisdiction for the limited purpose of resolving any disputes over the amount of the back pay award. Id. at 9.

This lawsuit ensued, with the Union asking the Court to enforce the arbitrator's award of

back pay and the Hospital asking that the award be vacated.

## DISCUSSION

### A. Legal Standards

The Hospital seeks vacatur of the arbitrator's award under the Federal Arbitration Act ("FAA"), which authorizes district courts to vacate such awards where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4). See also Local 1199, Drug, Hosp. & Health Care Employees Union v. Brooks Drug Co., 956 F.2d 22, 25 (2d Cir. 1992) ("If it is clear that the arbitrator has exceeded his authority, the award cannot stand."). However, the Second Circuit has "consistently accorded the narrowest of readings to the Arbitration Act's authorization to vacate awards 'where the arbitrators exceeded their powers' . . . . " Andros Compania Maritima, S.A. v. Marc Rich & Co., 579 F.2d 691, 703 (2d Cir. 1978).

The FAA itself reflects a "strong presumption in favor of enforcing arbitration awards," Wall Street Assocs., L.P. v. Becker Paribas Inc., 27 F.3d 845, 849 (2d Cir. 1994), since "the federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of [arbitration] awards." Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 196 F.3d 117, 124 (2d Cir. 1999) (quoting United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596 (1960)). See also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) ("[A]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation.") (citation omitted).

4

Thus, a court must defer to an arbitrator's award that "draws its essence from the collective bargaining agreement" rather than merely reflecting the arbitrator's "own brand of industrial justice." Wackenhut Corp. v. Amalgamated Local 515 & Int'l Union, United Plant Guard Workers of Am., 126 F.3d 29, 31 (2d Cir. 1997) (quoting Saint Mary Home, Inc. v. Serv. Employees Int'l Union, Dist. 1199, 116 F.3d 41, 44 (2d Cir. 1997)). Indeed, an arbitrator's award must be upheld if it offers "even a barely colorable justification for the outcome reached." Id. at 31-32 (quoting Andros, 579 F.2d at 704). Though a court may be persuaded that the arbitrator committed a "serious error," it may not overturn his decision "as long as [he was] even arguably construing or applying the contract and acting within the scope of his authority . . . ." United Paperworkers Int'l Union v. Misco, Inc., 484 U.S. 29, 38 (1987).

The rule of deference applies not only to arbitrators' factual findings, but also to their interpretations of contractual language. Id. ("The arbitrator may not ignore the plain language of the contract; but the parties having authorized the arbitrator to give meaning to the language of the agreement, a court should not reject an award on the grounds that the arbitrator misread the contract."); Enterprise Wheel, 363 U.S. at 599 ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.").

The scope of an arbitrator's authority "generally depends on the intention of the parties to [the] arbitration, and is determined by the agreement or submission." Brooks Drug Co., 956 F.2d at 25 (citation omitted). The parties' submission "serves not only to define, but [also] to circumscribe, the authority of arbitrators." Id. Nevertheless, the Second Circuit has warned against construing arbitration submissions narrowly: "The language of arbitration demands

5

should not be subjected to the same strict standards of construction that would be applied in formal court proceedings." Orban v. Angeles Metal Sys., 573 F.2d 739, 740 (2d Cir. 1978). Moreover, "there exists a 'powerful presumption that the arbitral body acted within its powers,'" In the Matter of Arbitration Between Soft Drink & Brewery Workers Union Local 812 and Ali-Dana Beverages, Inc., No. 95 Civ. 8081, 1996 U.S. Dist. LEXIS 10585, at *6 (S.D.N.Y. July 25, 1996) (quoting Parsons & Whittemore Overseas Co. v. Societe Generale de L'Industrie du Papier (RAKTA), 508 F.2d 969, 976 (2d Cir. 1974)), and it is a "long standing rule" that "any doubt concerning the scope of the submission agreement is to be resolved in favor of coverage . . . ." Synergy Gas Co. v. Sasso, 853 F.2d 59, 64 (2d Cir. 1988).

Accordingly, courts in this and other circuits have exhibited considerable deference toward arbitrators' determinations regarding the scope of their own authority. See Schoenduve Corp. v. Lucent Techs., Inc., 442 F.3d 727, 733 (9th Cir. 2006) ("[T]he arbitrator's interpretation of the scope of his powers is entitled to the same level of deference as his determination on the merits."); El Dorado Technical Servs., Inc. v. Union General de Trabajadores de Puerto Rico, 961 F.2d 317, 321 (1st Cir. 1992) ("An arbitrator's view of the scope of the issue committed to his care is entitled to the same far-reaching respect and deference as is normally accorded to the arbitrator's interpretation of the collective bargaining agreement itself."); Mobil Oil Corp. v. Indep. Oil Workers Union, 679 F.2d 299, 302 (3d Cir. 1982) ("[W]e believe that the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted."); Waverly Mineral Prods. Co. v. United Steelworkers of Am., 633 F.2d 682, 685 (5th Cir. 1980) ("We think it was for the arbitrator to decide just what the issue was that was submitted to it and argued by the parties."); Local 453, Int'l Union of Elec., Radio & Machine Workers v. Otis Elevator Co., 314

F.2d 25, 28 (2d Cir. 1963) ("[C]ourts must uphold the arbitrator in the exercise of the broadest jurisdiction in the absence of specific contractual limitations on that jurisdiction . . . .").

## B. Application

The Hospital contends that the arbitrator exceeded his authority and "decided issues not presented to him" by finding that it violated the CBA when it failed to recall Drs. Okpaku and Lee immediately. Def.'s Mem. Supp. Mot. Summ. J. [hereinafter Def.'s Mem.] 1. On the Hospital's theory, the arbitrator's inquiry should have ended with the finding that Drs. Okpaku and Lee were unqualified to fill the positions filled by Drs. Matos and Babalola. Id. at 7-8. Observing that the CBA's recall provision is triggered only where an "approved vacancy" exists, the Hospital claims that when it laid off Drs. Okpaku and Lee, no such vacancy existed, so it had no duty to recall them at that time. Id. at 5. The Hospital's principal argument thus combines two claims: not only (1) that the arbitrator exceeded the scope of his authority, but also (2) that he misinterpreted the CBA. The Hospital registers further objections (3) to the arbitrator's selection of a remedy not requested by the Union, and (4) to his alleged "modification" of the CBA. For the reasons explained below, the Court declines to disturb the arbitrator's award on any of these grounds.

### 1. Scope of Authority

The parties submitted the following question to the arbitrator: "Did the employer violate the seniority provision of the collective bargaining agreement, specifically Article XIX(5)a, when it failed to recall Doctors Okpaku and Lee to positions in the department of surgery? If so, what shall be the remedy?" This question "was a narrow one," the Hospital argues, and the

7

arbitrator's ruling "went far beyond the limited issues presented to him." Id. at 2-3.

The Court disagrees. As noted above, the Second Circuit has counseled against reading arbitration submissions narrowly, Orban, 573 F.2d at 740; has declared that doubts about the scope of arbitrators' authority must be resolved in favor of coverage, Synergy Gas Co., 853 F.2d at 64; and has instructed courts to uphold arbitrators "in the exercise of the broadest jurisdiction" provided that the arbitrators do not exceed "specific contractual limitations," Otis Elevator Co., 314 F.2d at 28. Although the Hospital might prefer that the submission had been phrased to limit the arbitrator to the question whether it had violated the CBA by failing to recall Drs. Okpaku and Lee *at some particular time*, the submission was *not* so phrased, and the arbitrator appears to have interpreted it instead to ask whether Article XIX(5)(a) required the Hospital to recall Drs. Okpaku and Lee *at any time*. This is a broad reading of the submisssion, but not an unreasonable one, and it by no means transgresses any specific limitation on the arbitrator's jurisdiction. The Court therefore defers to the arbitrator's interpretation of the submission, and finds that he did not exceed the scope of his authority.

The Court also notes that the cases the Hospital cites on this point are distinguishable. See Def.'s Mem. 7, Def.'s Reply 5-7. In 187 Concourse Associates v. Fishman, 399 F.3d 524 (2d Cir. 2005), the parties asked an arbitrator to decide whether an employee had been fired for just cause, and to fashion a remedy if his answer was "no." The arbitrator answered "yes"—and then fashioned a remedy anyway. Finding that the arbitrator had violated the terms of the submission, the Second Circuit affirmed the district court's vacatur of his award. Id. at 527. Here, by contrast, the arbitrator committed no such violation. Indeed, he fashioned a remedy only after finding that the Hospital *had* violated the CBA. Also distinguishable are Salem Hospital v. Massachusetts Nurses Association, 449 F.3d 234 (1st Cir. 2006) (affirming vacatur

8

of an arbitration award where the arbitrator's reading of the submission was implausible) and
Spero Electric Corporation v. International Brotherhood of Electrical Workers, 439 F.3d 324
(6th Cir. 2006) (finding that an arbitrator's award violated an express limitation on his
authority). In the instant case, the arbitrator's determination regarding the scope of his own
authority was not implausible; nor did it violate any express limitation.

### 2. Contract Interpretation

As for the arbitrator's interpretation of the CBA, as the Hospital suggests, the plain language of Article XIX(5) indicates that the Hospital must recall a laid-off employee with seniority only when an "approved vacancy" occurs that is in her specialty and whose duties she is qualified to perform. The CBA does not define the term "approved vacancy," but in finding that the Hospital violated Article XIX(5), the arbitrator appears to have interpreted "approved vacancy" to include the situation that existed after the layoff of Drs. Okpaku and Lee, at which time, he found, their functions were fulfilled by other employees not in the bargaining unit.

The Hospital argues that the arbitrator's reading of the CBA is incorrect. To support this contention, it offers an affidavit of Venra Mathurin, its Vice President of Human Resources, in which Mathurin states that "[a]t [Interfaith Medical Center] an 'approved vacancy' means an opening for a defined position for which the hospital has allocated salary and where there has been an authorization to fill that opening." Mathurin Aff. ¶ 8. The Union responds that Mathurin's definition was not before the arbitrator, and that this Court may not consider it. Pl.'s Reply Mem. Cross-Mot. Summ. J. [hereinafter Pl.'s Reply] 8-9.

The Court need not decide whether it may consider Mathurin's definition of "approved vacancy," since even if it were to consider Mathurin's definition, it would not overturn the

arbitrator's ruling on that basis. The Court notes once again that it approaches the arbitrator's reading of the contract with a high degree of deference, since "whatever arbitrators' mistakes of law may be corrected, simple misinterpretations of contracts do not appear one of them." Andros, 579 F.2d at 703 (citation omitted). The parties authorized the arbitrator to give meaning to the contract language, and he did so. Although his interpretation differs from the Hospital's, it does not appear that he "ignore[d] the plain language of the contract." Misco, 484 U.S. at 38. The Court is not empowered to disturb his interpretation unless it finds that he was not "even arguably construing or applying the contract." Id. It makes no such finding.

### 3. Choice of Remedy

Nor does the Court find it significant that the arbitrator ordered that Drs. Okpaku and Lee receive back pay, rather than ordering their reinstatement, the remedy they originally had sought. The question that the submission bound the arbitrator to answer, in the event he found that the Hospital had violated the CBA, was not "shall Doctors Okpaku and Lee be reinstated?" but instead "what shall be the remedy?" The submission thus conferred on him broad authority to fashion an appropriate remedy. An order of back pay was well within this authority.

### 4. "Modification" of the CBA

Finally, the Court is unpersuaded by the Hospital's contention that the arbitrator improperly modified the CBA's recall provision, creating "a substantive right found nowhere in the CBA: the 'right' not to be laid off until an approved vacancy is declared and a qualified applicant is found." Def.'s Mem. 6. On the arbitrator's logic, the Hospital contends, "[t]he only time . . . the hospital could lay off someone covered by the CBA is immediately before hiring

someone to fill a position for which the laid off person is not qualified." Id. The Court disagrees that the arbitrator's reading of the CBA necessitates this conclusion. The arbitrator's ruling does not suggest that the Hospital may not lay off a covered employee, inter alia, where it wishes to *eliminate* that employee's position. What it does suggest is that the Hospital may not lay off a covered employee, *preserve* that employee's position, and arrange for that employee's duties to be performed by non-bargaining unit employees until the position finally is eliminated. Here, the arbitrator found, the Hospital did exactly that: "The overwhelming weight of the credible evidence amply supports a finding that grievants performed a vital function at the hospital, one that still had to be performed after they were gone and was in fact done by non-bargaining unit personnel until Doctors Matos and Babalola came aboard." Arbitration Award 8. On this basis, he found that the Hospital had violated the CBA. The Court finds that his interpretation of the CBA does not amount to a "modification" of the CBA's substantive terms. Rather, it "draws its essence from the collective bargaining agreement," Saint Mary Home, 116 F.3d at 44 (citation omitted), and the Court will not disturb it.

## CONCLUSION

For the reasons explained above, the Hospital's motion to vacate the arbitration award is denied, and the Union's cross-motion to enforce the award is granted.

SO ORDERED.

Dated: Brooklyn, New York
      September 17, 2007

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge